GDB: USAO 2018R00386

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

2018 SEP 24 PM 3: 59

CLERK'S OFFICE
AT GREENBELT

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * BY_____ DEPUTY |
| **v.** | * **CRIMINAL NO.** PX 18 cr 492 |
| | * |
| **KENNETH PATRICK GAUGHAN,** | * **(Mail Fraud, 18 U.S.C. § 1341;** |
| | * **Forfeiture, 18 U.S.C. § 981(a)(1)(C),** |
| **Defendant** | * **28 U.S.C. § 2461(c), 21 U.S.C. § 853(p))** |
| | * |

\*\*\*\*\*\*\*

**INDICTMENT**

**COUNTS ONE THROUGH THREE**
**(Mail Fraud)**

The Grand Jury for the District of Maryland charges that:

**Introduction**

At times relevant to this Indictment:

1.      Defendant **KENNETH GAUGHAN** ("**GAUGHAN**"), a resident of Washington,

DC, was employed as the Assistant Superintendent of the Catholic Archdiocese of Washington,

DC ("ADW"), headquartered in Hyattsville, Maryland.

2.      ADW oversaw approximately 95 Catholic schools that educated approximately

27,000 children in Calvert County, Charles County, Montgomery County, Prince George's

County, Saint Mary's County, and Washington, DC.   ADW also provided counseling, shelter,

adoption and foster care, health care, immigration and legal aid, and affordable housing to its

parishioners.

3.      In his role as Assistant Superintendent, **GAUGHAN** was responsible for

recruiting and acting as the point of contact for contractors who could provide various services to

ADW, including contractors that could help ADW implement anti-bullying, crisis intervention, and professional development programs.

4.      In his role as Assistant Superintendent, **GAUGHAN** also obtained invoices for services from contractors and provided those invoices, along with requests for payment and supporting documentation, to his superiors for approval.

**SCY**

5.      On or about June 10, 2010, **GAUGHAN** opened a PNC account ending in 5615 ("PNC 5615") in the name of Solutions Counseling for Youth ("SCY"), an unlicensed entity in Washington, DC.

6.      Between in or about Spring 2010 and in or about Fall 2016, **GAUGHAN** persuaded ADW officials to issue checks to SCY to pay SCY to implement anti-bulling and crisis intervention programs, knowing that SCY was not a licensed entity and would not provide such services to ADW.

7.      Between in or about June 2010 and in or about Fall 2016, **GAUGHAN** deposited the checks into PNC 5615 that ADW made out to SCY, thereafter converting the money backing those checks to his personal use.

**Company 3**

8.      Company 2 was an international foundation located in the United Kingdom that provided educational services in 11 different countries, but not the United States.

9.      On or about June 22, 2011, **GAUGHAN** registered Company 3 with the Oregon Secretary of State, knowing that Company 3's business name was identical to Company 2's business name, which **GAUGHAN** misappropriated.

2

10.     On or about June 22, 2011, **GAUGHAN** opened a PNC account ending in 4978 ("PNC 4978") under Company 3's business name.

11.     Between in or about June 2011 and in or about December 2017, **GAUGHAN** persuaded ADW officials to issue checks made out to Company 3 to pay for anti-bullying and crisis counseling programs which **GAUGHAN** knew that Company 3 did not provide.

12.     Between in or about June 2011 and in or about December 2017, **GAUGHAN** deposited the checks ADW made out to Company 3 into PNC 4968, then converted the money backing those checks to his personal use.

**Company 4**

13.     In or about August 2016, ADW contracted with Company 1, which provided ADW with Application 1, a software program ADW used to send mass text messages to ADW's students and families.

14.     On or about January 26, 2018, **GAUGHAN** registered Company 4 in the State of Nebraska, knowing that the name of Company 4 was almost identical to the name of Application 1, which Company 1 had historically provided to ADW.

15.     In or about Winter 2018, **GAUGHAN** falsely represented to ADW officials that Company 1 was no longer providing Application 1 and that Application 1 had broken off into a separate company, which **GAUGHAN** falsely represented was Company 4.

16.     On or about April 20, 2018, **GAUGHAN** opened a Bank of America account ending in 7460 ("BOA 7460") under Company 4's business name.

17.     In or about April 2018, **GAUGHAN** persuaded ADW officials to issue a check for $21,060 to Company 4 for mass text messaging services, knowing that Company 4 would not provide such services.

18.     On or about April 17, 2018, **GAUGHAN** deposited the $21,060 check ADW wrote to Company 4 into BOA 7460, thereafter converting the money backing those checks to his personal use.

### The Scheme to Defraud

19.     Between at least in or about June 2010 and in or about April 2018, in the District of Maryland and elsewhere, **GAUGHAN** devised a scheme and artifice to defraud ADW, and to obtain money from ADW, by means of materially false and fraudulent pretenses, representations, and promises, with intent to defraud and knowledge of the scheme's fraudulent nature ("the scheme to defraud").

### Manner and Means of Scheme to Defraud

It was part of the scheme to defraud that:

20.     **GAUGHAN** created Solutions Counseling for Youth ("SCY"), an unlicensed company located in Washington, DC.

21.     **GAUGHAN** registered Limited Liabilities Companies in Oregon and Nebraska, including Company 3 and Company 4, respectively.

22.     **GAUGHAN** opened bank accounts under SCY, Company 3, and Company 4's business names.

4

23.     Acting in his capacity as Assistant Superintendent of ADW, **GAUGHAN** persuaded ADW officials to contract with SCY, Company 3, and Company 4 to implement anti-bullying and crisis intervention programs, and to provide other services to ADW.

24.     **GAUGHAN** failed to disclose to ADW officials that he controlled the bank accounts that he opened in SCY, Company 3, and Company 4's business names.

25.     **GAUGHAN** manufactured invoices from SCY, Company 3, and Company 4 to ADW, which **GAUGHAN** transmitted to ADW officials along with recommendations that ADW pay the invoices by means of checks that ADW sent through interstate mail carriers.

26.     **GAUGHAN** opened virtual and private mailboxes in order to receive the checks that ADW issued to pay for the invoices that **GAUGHAN** manufactured and transmitted to ADW officials.

27.     **GAUGHAN** deposited the checks that ADW mailed to SCY, Company 3, and Company 4 into the bank accounts that **GAUGHAN** opened using the business names of SCY, Company 3, and Company 4, respectively.

28.     **GAUGHAN** used the money backing the checks that ADW issued to SCY, Company 3, and Company 4 for his own benefit, and not for the benefit of ADW.

## The Charges

29.     On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

## KENNETH PATRICK GAUGHAN,

for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be delivered by mail and by private and commercial interstate carrier the following matters, in the form of envelopes containing the following checks:

| Count | Date | Description |
|---|---|---|
| 1 | September 23, 2016 | Check number 35821 from ADW to SCY for $1,600. |
| 2 | February 10, 2017 | Check number 38494 from ADW to Company 3 for $22,275. |
| 3 | April 6, 2018 | Check number 45889 from ADW to Company 4 for $21,060. |

18 U.S.C. § 1341

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.     Pursuant to Federal Rule of Criminal Procedure 32.2, notice is given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) as a result of **GAUGHAN**'s convictions under Counts One through Three of the Indictment.

2.     As a result of a conviction for the offenses charged in Counts One through Three, the defendant,

### KENNETH PATRICK GAUGHAN,

will forfeit to the United States all property constituting, or derived from, proceeds traceable to such violations.   The property to be forfeited includes, but is not limited to, real and personal property, including United States currency.

3.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of any defendant,

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third person;

c.     has been placed beyond the jurisdiction of the Court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
21 U.S.C. § 853(p)

Robert K. Hur
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED

Foreperson

Date: 9/24/18