# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES, | * | |
| Plaintiff, | * | |
| v. | * | Criminal Action No. 8:18-cr-00492-PX |
| KENNETH PATRICK GAUGHAN, | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

This Court presided over a five-day jury trial in this criminal action against Defendant Kenneth Patrick Gaughan. At the close of the Government's case and again at the close of all evidence, Gaughan moved for judgment of acquittal. The Court denied the motion with respect to all issues but venue, on which the Court reserved ruling pending briefing and oral argument. The Court has received briefing and heard argument on December 16, 2019. ECF Nos. 66, 67, 68. On the same date, the Court granted Gaughan's motion and entered judgment of acquittal in his favor as to venue only. ECF No. 69. This opinion explains the Court's reasoning.

**I.  Background**

For the purposes of Gaughan's motion, the facts are not seriously in dispute. Gaughan worked as an Assistant Superintendent for Catholic Schools within the Archdiocese of Washington ("ADW"). He worked physically out of the ADW's main administrative office located in Hyattsville, Maryland. ECF No. 67 at 1, 5. The Government presented evidence at trial tending to show that Gaughan created several fake corporations under false names and then fraudulently induced ADW to pay these corporations for services that would never be rendered. As such was ADW's typical practice, the evidence suggested that Gaughan triggered these

payments by submitting invoices, either through intraoffice mail or by hand, which would eventually cause ADW to mail payment in the form of checks.

The indictment charged Gaughan with three counts of mail fraud under 18 U.S.C. section 1341. The indictment specifically alleged that Gaughan, "for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be delivered by mail and by private and commercial interstate carrier" three specific checks between the dates of September 23, 2016 and April 6, 2018. ECF No. 1 at 6.

By the Government's evidence, however, the three checks at issue were not mailed from or delivered in the State of Maryland. Several ADW employees testified that ADW's practice is to prints its checks, place them in envelopes, and meter those envelopes for mailing at its Hyattsville office. ECF No. 67 at 1. Then, "once the parcels are metered, an ADW employee takes the parcels from the Hyattsville mailroom to the Brookland Post Office *in the District of Columbia.*" *Id.* (emphasis added). From there, the United States Postal Service ("USPS") "takes all mail from the Brookland Post Office to a processing facility in Gaithersburg, Maryland, where the parcels are deposited, processed, sorted, and shipped to their final destinations." *Id.* The evidence at trial indisputably showed that the three checks that are the subject of the indictment were eventually delivered in Nebraska, Oregon, and Washington, D.C., not in Maryland.

In his motion for judgment of acquittal, Gaughan contends primarily that the Government adduced insufficient evidence that venue is proper in the District of Maryland. For the following reasons, the Court agrees with Gaughan.

**II.     Standard of Review**

Rule 29 of the Federal Rules of Criminal Procedure requires that the Court "must enter

a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The court must "'[v]iew[] the evidence in the light most favorable to the Government.'" *United States v. Hickman*, 626 F.3d 756, 763 (4th Cir. 2010) (quoting *United States v. Bynum*, 604 F.3d 161, 166 (4th Cir.2010)). "The prosecution bears the burden of proving venue by a preponderance of the evidence and, when a defendant is charged with multiple crimes, venue must be proper on each count." *United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir. 2005). "[T]hus on a motion for judgment of acquittal, the defendant must show that no reasonable juror could conclude by a preponderance of the evidence that venue exists." *United States v. Jaensch*, 678 F. Supp. 2d 421, 431 (E.D. Va. 2010) (citing *Ebersole*, 411 F.3d at 524), *aff'd*, 665 F.3d 83 (4th Cir. 2011).

### III. Analysis

The Government puts forward two independent theories as to why venue is proper in the District of Maryland. First, the Government argues that venue lies in Maryland because Gaughan, while working at ADW in Hyattsville, submitted invoices which eventually caused the checks in question to be mailed. Second, the Government asserts that venue is proper under 18 U.S.C. section 3237(a), the continuing offense venue statute, because the USPS processed the checks in Gaithersburg, Maryland before sending them to their final destinations. The Court first discusses the Government's burden of demonstrating that venue is proper in Maryland, then addresses each of the Government's arguments separately.

#### A. Proper Venue is a Constitutional Mandate

Article III of the United States Constitution provides that all criminal trials "shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3; *see also* Fed. R. Crim. P. 18. Relatedly, the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . trial, by an impartial jury of the State and

3

district wherein the crime shall have been committed." U.S. Const. amend. VI. Because of the hardship imposed when facing "trial in an environment alien to the accused," venue is not merely a "formal legal procedure" but rather "touch[es] closely [on] the fair administration of criminal justice and public confidence in it." *United States v. Johnson*, 323 U.S. 273, 275–76 (1944); *see also United States v. Cabrales*, 524 U.S. 1, 6 & n.1 (1998) ("Proper venue in criminal proceedings was a matter of concern to the Nation's founders."). Accordingly, it is settled law that "in a criminal case, venue must be narrowly construed." *United States v. Jefferson*, 674 F.3d 332, 365 (4th Cir. 2012); *see also Johnson*, 323 U.S. at 276; *Travis v. United States*, 364 U.S. 631, 637 (1961) (reading 18 U.S.C. § 3237 narrowly "in light of the constitutional requirements"); *United States v. Ramirez*, 420 F.3d 134, 146 (2d Cir. 2005); *United States v. Brennan*, 183 F.3d 139, 146–47 (2d Cir. 1999).

B. Venue Analysis Applicable to Mail Fraud

The Court must first determine whether Congress has "specifically provided for venue in the statute defining an offense." *Jefferson*, 674 U.S. at 365; *United States v. Sterling*, 860 F.3d 233, 240 (4th Cir. 2017); *United States v. Verclas*, No. GJH-18-160, 2019 WL 95148, at *2 (D. Md. Jan. 3, 2019). Although some disagree as to whether the mail fraud statute itself provides for venue where the mail is placed, deposited or delivered, *United States v. Wood*, 364 F.3d 704, 723 (6th Cir. 2004) (Gwin, D.J., dissenting); *Venue in Mail Fraud*, U.S. Dep't of Justice, Justice Manual § 966, this Court finds that the mail fraud statute does not include a specific venue provision as is typically understood, *see Jefferson*, 674 U.S. at 365 (concluding that the "analogous" wire fraud statute does not include a specific venue provision).

Accordingly, the Court must determine where proper venue lies through a two-step analysis. First, the Court must identify the essential elements conduct, or the *actus rei*, of the

offense. *Jefferson*, 674 F.3d at 365, 367; *Sterling*, 860 F.3d at 241. Second, the Court must determine where the essential elements conduct took place. *Jefferson*, 674 F.3d at 365; *Sterling*, 880 F.3d at 241. Venue is proper in any district in which such essential elements conduct occurred. *Sterling*, 880 F.3d at 241.

As to the first step, the Court begins with the mail fraud statute itself. 18 U.S.C. section 1341 provides in relevant part that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud . . . places . . . deposits or causes to be deposited . . . or knowingly causes to be delivered [mail matter] . . . shall be fined under this title or imprisoned not more than 20 years." 18 U.S.C. § 1341. Here, the Government has elected to charge Gaughan solely with "caus[ing] to be delivered" three checks in furtherance of the criminal fraud scheme. ECF No. 1 at 6. Accordingly, for purposes of venue, the essential acts analysis is confined to the Government's chosen prosecution theory. *See United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999).[1]

As to how this Court determines the essential elements acts, the United States Court of Appeals for the Fourth Circuit has provided important guidance. In *United States v. Jefferson*, the court reached this very question as it pertained to the "analogous" wire fraud statute[2] which shares "identical elements" to the mail fraud statute. 674 F.3d 332 (2012). *Jefferson* involved the Eastern District of Virginia trial of Congressman William Jefferson. *Id.* at 335–36. The sixteen-count indictment alleged that Jefferson solicited bribes, and in exchange used his

---

[1] The Government agreed at oral argument that prosecution was limited to proving the act of "caus[ing] to be delivered" as charged in the indictment.

[2] The wire fraud statute reads in relevant part that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud . . . transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years." 18 U.S.C. § 1343.

5

influence to leverage a lucrative telecommunications contract between a Virginia business woman, a Kentucky corporation, and the Nigerian Government. *Id.* at 341–46. Aspects of this telecommunications scheme took place in the Eastern District of Virginia (for example, when in an Arlington, Virginia hotel the businesswoman gave Jefferson $100,000 in cash to pay off the Nigerian Vice President). *Id.* at 346. However, Count Ten of the indictment, which alleged honest services wire fraud under 18 U.S.C. sections 1343 and 1346, was predicated only on a 2005 telephone call from Ghana to Louisville, Kentucky in which Jefferson discussed ongoing aspects of the telecommunications scheme. *Id.* at 364.

On appeal, Jefferson argued that venue was lacking as to Count Ten because the telephone call in question was neither made from nor received in the Eastern District of Virginia. *Id.* at 365. The Fourth Circuit agreed. *Id.* at 364–68. In conducting its two-step analysis, the Fourth Circuit held that the essential conduct for wire fraud and mail fraud is "misuse of the mail or wire" as this "has consistently been viewed as the *actus reus* that is punishable by federal law." *Id.* at 367. The court further made clear that the prohibited misuse of the mail or wire was "the act of putting a letter in the mailbox or making a telephone call." *See id.* at 367. Thus, because Jefferson's telephone call did not begin or end in the Eastern District of Virginia, venue was improper as to that charge. *Id.* at 368.

Importantly, the *Jefferson* court took great pains to separate the essential element conduct that is the "physical act of transmitting the wire communication," from actions related to the *mens rea* element of "the existence of a scheme to defraud." *See id.* at 367–68. Drawing comparison to an "identical element" in the mail fraud statute, the court explained that "devising a scheme to defraud is not itself conduct," and that basing venue upon "participation in the scheme impermissibly engrafts a conduct component onto a pure intent element." *Id.* at 368.

6

Accordingly, the court concluded that it could not rely "on Jefferson's 'acts directly or causally connected to the wire transaction' as providing venue, because aside from the transmission itself, there are no acts necessary to establish the crime of wire fraud." *Id.* at 368. Subsequently, and applying *Jefferson*, the Fourth Circuit and this Court have reaffirmed that scheme-related conduct is "merely 'preparatory'" for purposes of determining the "essential" conduct of the offense. *Sterling*, 860 F.3d at 241 (quoting *Ramirez*, 420 F.3d at 144, for the proposition that "for purposes of mail fraud, venue lies where an individual actually misuses the mail"); *see also Verclas*, 2019 WL 95148, at *3 ("[A]cts which occur only in furtherance of the crime or after a crime is complete cannot provide a basis for venue because they are not essential to the underlying offense.").

In the end, the lesson of *Jefferson* is simple: Under the first step of the two-step inquiry, the essential element conduct for mail fraud is the physical act of placing, depositing or delivering the mail. *Jefferson*, 674 F.3d at 366–67. In Gaughan's case, the act of delivering the mail remains this Court's focus.

### C. Applying the Two-Step Analysis Venue is not Proper in the District of Maryland

The Government's first argument, raised at oral argument, is that venue is proper in the District of Maryland because Gaughan submitted invoices to ADW while working in Hyattsville, and these invoices "caused" the ultimate delivery of the checks in question. The Government, more particularly, maintains that Gaughan's submission of the invoices is part of the essential element conduct that occurred in Maryland since, in the language of the indictment, this action eventually "caused [the checks in question] to be delivered by mail." ECF No. 1 at 6. Because this argument fundamentally conflicts with *Jefferson*, the Court must disagree.

At bottom, the Government's emphasis on the verb "cause" rather than "deliver" leads it

7

to identify incorrectly the essential element conduct for mail fraud. The mail fraud statute prohibits the act of placing, depositing or "caus[ing]" to be deposited or delivered. *See* 18 U.S.C. § 1341. As for delivery, the statute prohibits "caus[ing]" to be delivered mail matter for an obvious reason: no private individual can physically *deliver* the mails; the delivery must be accomplished by the USPS or a commercial carrier for the offense to have occurred. *See Salinger v. Loisel*, 265 U.S. 224, 234 (1924) ([T]he place at which [the defendant] causes the delivery is the place at which it is brought about in regular course *by the agency which he uses for the purpose*." (emphasis added)). As a matter of practical reality, then, the only manner in which the statute may criminalize "delivery" of mails in furtherance of a fraud scheme is to make clear that the *delivery* must be "cause[d]" by the defendant. *See Salinger*, 265 U.S. at 534 (explaining that Congress added the "causes to be delivered" clause to § 1341 to "provide[] for the punishment of the deviser of the scheme or artifice where he causes a letter in furtherance of it to be delivered by the mail according to the direction on the letter"); *Ramirez*, 420 F.3d at 147 n.12. Thus, "cause" as used in the mail fraud statute is designed to ensure that those defendants who procure the act of delivery or deposit of the mails through an unwitting mail carrier cannot escape liability.

"Cause," however cannot be the essential conduct element of the offense for two important reasons. First, this reading ignores *Jefferson*'s clear separation of the physical act of placing, depositing or causing to be delivered the mail—the essential element conduct—with conduct merely associated with the *mens rea* scheme to defraud. The Government's emphasis on causal acts broadens the essential conduct to include any actions which eventually result in a mailing. This approach would allow venue based on "acts directly or causally connected" to the mailing, of which *Jefferson* explicitly disapproved. *Jefferson*, 674 F.3d at 365, 367–68.

8

Second, this interpretation would also provide a defendant no Double Jeopardy protection because any act of "causation" could allow re-prosecution if the first chosen theory of causation failed. As the *Jefferson* court explained, Double Jeopardy principles buttress its strict interpretation of the mail and wire fraud statutes. 674 F.3d at 367. These statutes punish the individual acts of transmitting or mailing rather than the course of conduct of a scheme to defraud. *Id.* Thus, the Government may, as it did here, charge multiple instances of mailing in multiple counts even if they all take place in furtherance of one common scheme. *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 302 (1932) and *Badders v. United States*, 240 U.S. 391, 394 (1916) ("[T]here is no doubt that the law may make each putting of a letter into the postoffice a separate offense.")). By contrast, if the essential element conduct included causal acts that generally further the "scheme to defraud," this would present multiplicity problems in that it would punish the same "scheme to defraud" more than once. *Id.* at 367, 368 n.47. Accordingly, as it would turn upside down such fundamental principles of criminal law, the Court simply cannot credit the Government's argument. Thus, the essential conduct element on which this Court remains focused is the mail's delivery.

The second step of the analysis, determining where the delivery occurred, is straightforward. The record evidence demonstrated that Gaughan "caused [the checks] to be delivered" in Nebraska, Oregon, and Washington, D.C., but not Maryland. Thus, while the charges may well have been brought elsewhere, the Court finds that no reasonable juror could conclude by a preponderance of the evidence that venue was proper in the District of Maryland.

        D.        **18 U.S.C. section 3237(a) Does not Alter this Result**

Likely realizing that the relevant deliveries all occurred outside of Maryland, the Government posits alternatively that because the USPS moved the checks from the D.C. post

office where they had been deposited to a mail processing center in Gaithersburg where the checks were sorted and forwarded to their ultimate delivery destinations, venue is proper in Maryland pursuant to the general venue provision set forth in 18 U.S.C. section 3237(a). The Court disagrees that section 3237(a) permits this "pass-through" theory of venue as to mail fraud prosecutions.

Section 3237(a) states that:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> *Any offense involving the use of the mails*, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, *may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves*.

18 U.S.C. § 3237(a) (emphasis added). The Government's argument rests on the premise that mail fraud is an "offense involving the use of the mails," and thus section 3237(a) provides for venue in any district "through . . . which . . . mail matter . . . move[d]."

Section 3237(a)'s applicability to mail fraud prosecutions has been the subject of considerable debate. *Compare Brennan*, 183 F.3d at 144–49 *with Wood*, 364 F.3d 712–13, *United States v. Martino*, 648 F.2d 367, 400 (5th Cir. Jun. 1981), *and United States v. Nall*, 146 F. App'x 462, 466 & n.4 (2005); *see also United States v. Turley*, 891 F.2d 57, 60 n.2 (3d Cir. 1989) (noting Government's concession that section 3237(a) "is not applicable to mail fraud"); *United States v. Morgan*, 393 F.3d 192, 198–201 (D.C. Cir. 2004) (concluding that conviction of receiving stolen property under 18 U.S.C. § 641 was not a continuing offense "involving . . . transportation in interstate . . . commerce" under section 3237(a) because its elements did not

10

mention transportation in interstate commerce). However, upon careful review, the Court finds that section 3237(a) does not sweep so broadly as the Government contends. This conclusion is consistent with the Second Circuit's decisions in *United States v. Brennan* and *United States v. Ramirez*, and also with Fourth Circuit precedent which extensively cites *Ramirez* with approval.

*Brennan* involved the Eastern District of New York trial of an airline and airline executive on 43 counts of mail fraud. 183 F.3d at 143–44. The Government argued that venue was proper in the Eastern District of New York under section 3237(a) because, when the defendants sent letters from Manhattan, each letter was routed through LaGuardia or John F. Kennedy Airports in the Eastern District before reaching their destinations. *Id.* at 144. *Brennan* rejected this pass-through theory of venue, concluding that section 3237(a)'s "use of the mails" clause does not apply to all offenses that somehow relate to the mail, but rather only to those criminal statutes that explicitly proscribe the *actus reus* of "use of the mails" in their elements. *Id.* at 147.

As *Brennan* correctly recounted, Congress added the second paragraph of section 3237(a) in response to the United States Supreme Court's decision in *United States v. Johnson*, 323 U.S. 273 (1944). *See Brennan*, 183 F.3d at 146. *Johnson* involved a prosecution under the Federal Denture Act, which proscribed the "use of the mails" to send dentures made by someone other than a licensed dentist. *Johnson*, 323 U.S. at 274. In deciding where venue was proper, the *Johnson* Court articulated a narrow rule of construction for venue statutes, reasoning that where a statute equally permits two readings, "construction should go in the direction of constitutional policy even though not commanded by it." *Id.* at 276. The *Johnson* Court thus read the Denture Act provision narrowly and concluded that venue was only proper in districts from which the defendant sent dentures and not where they were received. *Id.* at 276–78.

In reaction to *Johnson*, Congress added section 3237(a)'s second paragraph, thereby expanding venue for certain continuing offenses. 18 U.S.C. § 3237(a). As this new paragraph explicitly referred to the act that was prohibited in the Denture Act—the "use of the mails"—it quite clearly abrogated *Johnson*'s holding with respect to the Denture Act. However, federal courts, including the Supreme Court, continued to follow *Johnson*'s constitutional instruction to interpret venue provisions narrowly. *See, e.g.*, *United States v. Cores*, 356 U.S. 405, 410 (1958); *Travis*, 364 U.S. at 634–35; *United States v. Ross*, 205 F.2d 619, 621 (10th Cir. 1953).

After *Johnson*, the Tenth Circuit addressed a similar venue issue in *United States v. Ross*, 205 F.2d 619, 621 (10th Cir. 1953). The defendant in *Ross* was prosecuted under 18 U.S.C. section 1461 which then prohibited "knowingly deposit[ing] for mailing or delivery" an item that is designated as non-mailable. *Id.* at 620. Although the Government urged that this law involved the "use of the mails" under section 3237(a) and thus could try the defendant in any district through which mail traveled, the court disagreed. *Id.* at 621. Looking to the specific action prohibited by section 1461—"deposit[ing]" mail—the court held that section 3237(a) did not apply because "there is a clear distinction between a deposit for mailing or delivery and the use of the mails." *Id.* at 621.

After *Ross*, Congress again stepped in. *Brennan*, 183 F.3d at 148. But significantly, Congress did not broaden the language of section 3237(a) to reach statutes that criminalize depositing or receiving items through the mail. *Id.* at 148. Rather, Congress amended section 1461 to prohibit expressly "use of the mails," thus ensuring that the criminal provision at issue in *Ross* fell under the second paragraph of section 3237(a) which applies to "any offense involving the use of mails." *Id.*

With this history as its guide, the *Brennan* court concluded that Congress drafted section

12

3237(a)'s "use of the mails" clause to reach criminal statutes that, by their express terms, prohibit "the more general and ongoing act of 'us[ing] the mails.'" *Id.* at 147. Title 18 includes many such criminal provisions which expressly punish "use of the mails." *See id.* (citing 18 U.S.C. §§ 43(a)(1), 514(a)(3), 844(e), 1461, 1717(b), 1735(a)(1), 1738(a), 1952(a), 2101, 2332b(b)(1)(A)); *see also* 18 U.S.C. §§ 1821, 2261A(2), 2343(e)(2), 2422(b). By contrast, the mail fraud statute prohibits only the more specific act of "deposit[ing]" "plac[ing]" or "deliver[ing]" mail, and thus does not fall under section 3237(a)'s "use of the mails" provision. *Brennan*, 183 F.3d at 147–48.

The Second Circuit reaffirmed *Brennan* in *Ramirez*, a mail fraud prosecution in which the court held venue improper where none of the defendant's mailings were sent to or from the Southern District of New York. *Ramirez*, 420 F.3d at 143–47. Importantly, the Fourth Circuit in *Jefferson* and decisions since have reaffirmed the persuasive vitality of *Ramirez* in this Circuit. *See Jefferson*, 674 F.3d at 367 (citing *Ramirez*'s holding that "the essential conduct element of mail fraud 'encompasses the overt act of putting a letter into the postoffice'" and that "a conduct element is one of action, such as the act of putting a letter in the mailbox or making a telephone call"); *Sterling*, 860 F.3d at 241 (citing *Ramirez*'s holding that "for purposes of mail fraud, venue lies where an individual actually misuses the mails").

The Court finds *Brennan* and its progeny persuasive. As in *Brennan*, this Court concludes that section 3237(a) does not apply to mail fraud. The Court begins by noting that section 3237(a) is ambiguous as to what is meant by "use of the mails." The clause, on the one hand, may be interpreted broadly, and conceivably reach any and all offenses that somehow involve any use of mails regardless of how such use is specifically criminalized. On the other hand, when read narrowly and in concert with other criminal provisions that prohibit "use of

13

mails," section 3237(a) may apply to the many statutes which criminalize expressly and specifically "use of the mails," as opposed to "deposit," "delivery" or "placement," in the mails. Given that section 3237(a) is arguably susceptible to more than one reading, the "construction should go in the direction of constitutional policy" of construing venue narrowly. *Johnson*, 323 U.S. at 276.

Here, applying section 3237(a) as the Government urges would expand venue without any limit and cast doubt on its constitutional validity. Under the Government's understanding of section 3237(a), a defendant would be subject to prosecution for mail fraud "in any district through which a mail truck carrying his mail happened to drive." *Brennan*, 183 F.3d at 147. Or, as the Government acknowledged at oral argument, if the mail truck is hijacked and driven to a far-flung district, venue would be proper based on the hijacker's preferred route. The Court doubts this reading comports with the Supreme Court's directive that "[v]enue should not be made to depend on the chance use of the mails, when Congress has so carefully indicated the locus of the crime." *Travis*, 364 U.S. at 361; *see also Johnson*, 323 U.S. at 275 ("[S]uch leeway not only opens the door to needless hardship to an accused by prosecution remote from home [a]nd from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution."). Thus, so as to avoid interpreting section 3237(a) in a manner that produces unconstitutional results, the Court must follow *Johnson* and construe venue narrowly to where Congress has indicated is the "locus of the crime"—where the mails were delivered.

Additionally, the Court notes *Brennan* and *Ross* have been on the books for decades, and that other courts have disagreed as to whether section 3237(a)'s "use of the mails" applies to mail fraud prosecutions. Yet instead of clarifying the sweep of section 3237(a) by amending the

14

statute itself, Congress has, at times, chosen to amend those substantive criminal provisions to prohibit "use of mails" where it deemed proper. *Brennan*, 183 F.3d at 148 (discussing amendment of § 1461). Congress has never chosen to amend similarly the mail fraud statute. Thus, the Court may read properly that Congress intended the mail fraud statute to apply as written—prohibiting the "placing" "depositing" or "delivering" the mails so as to further a scheme to defraud, but not to more broadly criminalize "use of the mails" triggering the applicability of section 3237(a). *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal alterations omitted)); *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

In short, this Court follows the Second Circuit's reasoning in *Brennan* and finds that section 3237(a)'s "use of the mails" clause does not apply to mail fraud. This reasoning comports with text and history of both statutes. It also bears faith to the mandate that this Court read any statutory ambiguity in favor of avoiding an application that would lead to unconstitutional results.[3] The Court therefore concludes that section 3237(a) does not authorize venue in the District of Maryland based on the Government's pass-through theory.

The Government, in response, presses that the Fourth Circuit in *United States v. Sorce*, 308 F.2d 299 (4th Cir. 1962) has already determined that 3237(a)'s "use of the mails" clause

---

[3] The Sixth Circuit adopted the Government's view of section 3237(a) in *United States v. Wood*, 364 F.3d 704 (6th Cir. 2004), which the Sixth Circuit has since reaffirmed. *See United States v. Petlechkov*, 922 F.3d 762, 769 (6th Cir. 2019). However, *Wood* addressed a mail fraud prosecution where mail never passed to, from, *or* through the district in question. *See Wood*, 364 F.3d at 713–14. Thus, *Wood*'s analysis applying section 3237(a) to the mail fraud statute appears to be dicta. Other Circuits do not analyze the issue in depth. *See Martino*, 648 F.2d at 400 (applying section 3237(a) without analysis); *Nall*, 146 F. App'x at 466 & n.4 (following *Martino* as binding precedent from the former Fifth Circuit without analysis).

15

applies to mail fraud prosecutions. The Court disagrees that *Sorce* requires a different result.

The defendant in *Sorce* lived in New Jersey and fraudulently induced a resident of Pennsylvania to send a check for $40,000 to the defendant's corporation located in Maryland. *Id.* at 300. Although defendant's scheme involved several other mailings between the defendant in New Jersey and the victim in Pennsylvania, the indictment brought in the District of Maryland charged the defendant only for the final mailing in which the victim enclosed his check and sent it to Maryland. *Id.*

On appeal, the Fourth Circuit rejected the defendant's argument that venue was improper in Maryland because he lived in New Jersey and this is where certain pertinent records could be found. *Id.* at 301. In reaching this result, *Sorce* described section 3237(a) as the "applicable venue statute" and quoted its "use of the mails" clause. *Id.* at 301.

*Sorce*, however, does not do the work the Government assigns it. To begin, *Sorce* is not a pass-through case. The defendant in *Sorce* caused the victim to mail his check to Maryland, and the defendant was prosecuted where he caused that mail to be delivered. *Id.* at 301. Accordingly, even if the Government is correct that the *Sorce*'s citation to section 3237(a) is inconsistent with *Brennan*, the conclusion in *Sorce* in no way depended on reading section 3237(a)'s "use of the mails" provision. It is, in this fundamental sense, dicta. *United States v. Norman*, 935 F.3d 232, 240 (4th Cir. 2019) ("[A] 'passing observation' on an issue neither briefed nor disputed does not constitute a holding.").

But even if the Court accepts that *Sorce* controls, *Sorce* does not endorse the Government's pass-through theory, and indeed prescribes an analysis that would preclude venue in this case. In no uncertain terms, *Sorce* employed a two-step analysis. The Court announced that when reaching the propriety of venue, it is first "necessary to determine whether the

16

applicable venue statute permits an indictment in that district, *and of course whether the crime was committed there*." *Sorce*, 308 F.3d at 300 (emphasis added). *Sorce* then scrutinized the defendant's actions and concluded that the mail fraud in question had been committed in Maryland as this was where the defendant quite intentionally caused the physical delivery of the mail. *Id.* at 301.

The Court next concluded that the *second* step of the venue analysis required review of section 3237(a) to ascertain whether venue was proper in the district in which the crime had been committed. *Id.* at 301. In so explaining, *Sorce* cited section 3237(a), but only after the Court determined that the check was delivered "into" Maryland. *Id.* ("As the fraudulently induced mail was sent by Rothacker into Maryland, the case falls within the express terms of the statute."). The *Sorce* Court, therefore, was never pressed to reach whether venue is proper in any district through which the mails merely passed.

Here, following *Sorce* faithfully compels the same result. Gaughan's crime, "causing to be delivered" three checks, would render prosecution proper in the districts into where those checks were delivered. The evidence indisputably reflects that the delivery occurred in Nebraska, Oregon, and Washington, D.C., not Maryland. Thus, venue is not proper in this district.[4]

### IV. Conclusion

For all these reasons, the Court concludes that no reasonable juror could find, by a

---

[4] Although not dispositive, it is noteworthy that even the Department of Justice's own attorney manual rejects the Government's expansive arguments, and rather directs its Assistant United States Attorneys that section 3237(a) does not create pass-through venue in mail fraud prosecutions. *See Venue in Mail Fraud*, U.S. Dep't of Justice, Justice Manual § 966 ("Section 1341, however, has its own 'built-in' venue provisions. The locus of the offense under section 1341 has been carefully specified; and only the acts of 'placing,' 'taking' and 'causing to be delivered' at a specified place have been penalized. Venue should therefore be placed according to the specific prohibitions of section 1341, irrespective of section 3237(a)."). The Court finds the Department of Justice analysis far more persuasive, and constitutionally permissible, than the Government's arguments in this case.

17

preponderance of the evidence, that the Government has met its burden of proving venue. Thus, Gaughan's Rule 29 motion was granted and judgment of acquittal entered in Gaughan's favor. ECF No. 69.[5]

  1/2/2020                                    /s/                    
Date                                         Paula Xinis
                                             United States District Judge

---

[5] Although the parties contest whether the Double Jeopardy Clause prevents Gaughan's re-prosecution in another district, the Court need not reach this less than straightforward issue. *See* ECF No. 66 at 6 (noting conflicting authority with no Fourth Circuit precedent); ECF No. 67 at 5–6. Rather, the question is best presented to the court before which re-prosecution may occur, or if the Government appeals this decision, to the Fourth Circuit in the event the court determines venue is proper in Maryland.